JOHN C. WILSON III ET AL. *v.* LUCILLE B. KELLEY ET AL.
(14539)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued October 1--decision released December 8, 1992

*Jeremiah Donovan,* with whom was *Terry Sablone Donovan,* for the appellants (defendants).

*Thomas A. Cloutier,* with whom was *R. Scott Patterson,* for the appellees (plaintiffs).

*Deborah J. Blood* and *W. Campbell Hudson III* filed a brief for the borough of Fenwick as amicus curiae.

BORDEN, J. The dispositive issue in this appeal is whether the plaintiffs' declaratory judgment action challenging the manner in which their taxable real property had been assessed was barred by the one year statute of limitations provision of General Statutes § 12-119.[1] The named plaintiffs brought a declaratory

---

[1] General Statutes § 12-119 provides: "REMEDY WHEN PROPERTY WRONG-FULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been

judgment class action on behalf of most of the taxpayers[2] named on the October 1, 1989 grand list of the town of Old Saybrook, against the defendants, Lucille B. Kelley and Olive P. Mulvihill, the town's assessor and tax collector, respectively. The plaintiffs sought a declaration that the grand list was invalid and an injunction enjoining the defendants from collecting taxes based on that list. The trial court held that the assessor's failure personally to view and evaluate each real estate parcel listed on the grand list violated General Statutes (Rev. to 1987) § 12-62,[3] and thereby ren-

arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[2] The named plaintiffs were John C. Wilson III and Hall M. Wilson. Approximately one hundred taxpayers chose to opt out of the certified class.

[3] At the time the defendants began their decennial revaluation of the parcels on the grand list, General Statutes (Rev. to 1987) § 12-62 (a) provided: "Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years after such revaluation, view all of the real estate of their respective municipalities, and shall revalue the same for assessment and, in the performance of these duties, except in any municipality where there is a single assessor, at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors."

Minor changes to § 12-62 were made in 1979, 1989, and 1991. Most recently, the legislature enacted Public Acts 1992, No. 92-221 presumably to clarify that assessors are not required by § 12-62 to view and evaluate

dered the 1989 revaluations invalid. The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We now reverse the judgment of the trial court.

The relevant facts are as follows. On March 23, 1991, the plaintiffs, acting on behalf of most of the real property owners in the town of Old Saybrook, filed a class action against the defendants seeking a declaratory judgment that the town's 1989 grand list was invalid as violative of § 12-62. The plaintiffs' complaint also sought damages, attorney's fees, a permanent injunction restraining the tax collector from collecting any further real estate taxes based on the 1989 revaluation, and other equitable relief, including a refund of the taxes collected pursuant to the 1989 grand list.

The complaint alleged that the assessor had violated § 12-62 by failing to view personally each and every parcel of real estate listed on the grand list, and by failing to exercise her own independent judgment in setting the assessment values on that list. The defendants admitted that the assessor had not personally viewed every property on the grand list, but asserted that she had properly relied upon the delegation of that duty

personally each parcel in the municipality. This act amends § 12-62 by adding, inter alia, subsection (g) which provides: "Any assessor required to view by physical observation all real estate in a municipality by the provisions of this section may designate a revaluation company certified in accordance with section 12-2b to view and evaluate, pursuant to a methodology approved by such assessor, all or any portion of such real estate, provided nothing in this subsection shall relieve any assessor of any other requirement relating to such revaluation imposed by any provisions of the general statutes, any public or special act or any municipal charter."

This act retroactively validated assessment lists for all towns *except* for any assessment list on which "a judgment of any court of this state or the United States has been rendered." Public Acts 1992, No. 92-221, § 2. Consequently, subsection (g) does not apply to the present appeal.

to S.L.F. Appraisal, Inc., a state-certified revaluation company that had been hired by the assessor to conduct the revaluation. The defendants denied the plaintiffs' claim that the assessor had failed to exercise her independent judgment in reaching the revaluation figures. The defendants also claimed that the declaratory judgment class action was barred by the statute of limitations or the equitable doctrine of laches.

The trial court held that the 1989 revaluation violated § 12-62 and was therefore void because of the assessor's reliance on the revaluation company to view each parcel of real estate, and because the assessor had failed to exercise her independent judgment in valuing each parcel. In a supplemental judgment, the trial court: (1) enjoined the tax collector from collecting any taxes based on the 1989 grand list; (2) ordered the assessor to revalue all the parcels in the town and to issue a new grand list by October, 1993; (3) ordered the assessor to base future taxes on the 1988 grand list until the issuance of a new list; (4) ordered the tax collector to credit the plaintiffs' accounts for any overpayments based on the 1989 grand list; and (5) ordered the defendants to pay $10,000 in attorney's fees. The trial court also rejected the defendants' statute of limitations and laches defenses.

The defendants claim that the trial court improperly: (1) interpreted § 12-62 to require town assessors to view personally each parcel of real property in the municipality during a decennial revaluation; (2) concluded that the assessor had not exercised her independent judgment regarding the value of each such parcel; (3) excluded evidence concerning the manner in which other towns conduct revaluations, and the role of the state office of policy and management in regulating revaluation companies and supervising decennial revaluations; (4) held that the plaintiffs' action was not barred by the one year statute of limitations provision

in § 12-119;[4] (5) granted the plaintiffs' request for certain equitable relief; and (6) awarded attorney's fees. Because we hold that the plaintiffs' action was barred by the statute of limitations provision of § 12-119, we need not address the defendants' other claims.

The purpose of a declaratory judgment action, as authorized by General Statutes § 52-29[5] and Practice Book § 390,[6] is to "secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of *legal relations* between the parties." (Emphasis added.) *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 613, 508 A.2d 743 (1986). General Statutes § 52-29 (a) requires that a declaratory judgment "declare *rights* and other *legal relations.*" (Emphasis added.) Similarly, Practice Book § 390 requires that the plaintiff be in danger of a loss or uncertainty "as to his *rights* or *other jural relations.*" and that there be a bona fide *"issue in dispute* or substantial uncertainty of *legal relations.*" (Emphasis added.) Thus, "[d]eclaratory relief is a mere procedural device by which various types of substan-

---

[4] The defendants do not claim on appeal that the equitable doctrine of laches barred the plaintiffs' declaratory judgment action, and thus we do not address the trial court's denial of the defendants' laches defense.

[5] General Statutes § 52-29 (a) provides: "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

[6] Practice Book § 390 provides: "CONDITIONS

"The court will not render declaratory judgments upon the complaint of any person:

"(a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or

"(b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or

"(c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or

"(d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

tive claims may be vindicated." *Luckenbach Steamship Co.* v. *United States,* 312 F.2d 545, 548 (2d Cir. 1963).

Implicit in these principles is the notion that a declaratory judgment action must rest on some cause of action that would be cognizable in a nondeclaratory suit. See *Hodgdon* v. *Campbell,* 411 A.2d 667, 669 (Me. 1980) (declaratory judgment statutes do "not create a new cause of action; [their] purpose is 'to provide a more adequate and flexible remedy in cases where jurisdiction already exists' "). To hold otherwise would convert our declaratory judgment statute and rules into a convenient route for procuring an advisory opinion on moot or abstract questions; see *Anderson* v. *Southwest Savings & Loan Assn.,* 117 Ariz. 246, 571 P.2d 1042 (1977); and would mean that the declaratory judgment statute and rules created substantive rights that did not otherwise exist. We decline so to hold.

Consequently, in analyzing whether a declaratory judgment action is barred by a particular statutory period of limitations, a court must examine the underlying claim or right on which the declaratory action is based. *Romer* v. *Leary,* 425 F.2d 186, 188 (2d Cir. 1970); *Swan* v. *Board of Higher Education,* 319 F.2d 56, 59 (2d Cir. 1963); *Luckenbach Steamship Co.* v. *United States,* supra, 548–59; cf. *Gannon* v. *Sanders,* 157 Conn. 1, 7, 244 A.2d 397 (1968) (in determining whether plaintiff has standing in a declaratory judgment action, court must look at underlying claim on which action is based). It necessarily follows that if a statute of limitations would have barred a claim asserted in an action for relief other than a declaratory judgment, then the same limitation period will bar the same claim asserted in a declaratory judgment action.

We must, therefore, inquire into the source of the underlying right or claim on which the plaintiffs'

declaratory judgment action is predicated. We first note that the legislature has established two primary methods by which taxpayers may challenge a town's assessment or revaluation of their real property. First, any taxpayer claiming to be aggrieved by an action of an assessor may appeal, pursuant to General Statutes § 12-111,[7] to the town's board of tax review. The taxpayer may then appeal, pursuant to General Statutes § 12-118,[8]

[7] General Statutes § 12-111 provides in pertinent part: "APPEALS TO BOARD OF TAX REVIEW. . . . [A]ny person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to such board of tax review, which shall determine all such appeals and report in writing the final determination of such appeals to each such person within one week after such determination has been made. Such board may equalize and adjust the valuations and assessment lists of such town and may increase the items of taxable property in the list of any person, or the number, quantity or amount of any such item, or add to any such list any taxable property or interest therein omitted by the assessors which should be added thereto . . . ."

[8] General Statutes § 12-118 provides in pertinent part: "APPEALS FROM CONNECTICUT APPEALS BOARD FOR PROPERTY VALUATION. Any person . . . claiming to be aggrieved by the findings or determinations of the Connecticut appeals board for property valuation may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district which includes the town or city in which the property constituting the subject of such appeal is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

an adverse decision of the town's board of tax review to the Superior Court. The second method of challenging an assessment or revaluation is by way of § 12-119. See footnote 1, supra.

In *Second Stone Ridge Cooperative Corporation* v. *Bridgeport,* 220 Conn. 335, 597 A.2d 326 (1991), we summarized this two-part statutory scheme for challenging assessments and revaluations. Sections 12-111 and 12-118 provide "a method by which an owner of property may directly call in question the valuation placed by assessors upon his property by an appeal to the board of relief, and from it to the courts. . . . These statutes limit to a short period the time within which the property owner can seek relief under them, and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes." Id., 339, citing *Cohn* v. *Hartford,* 130 Conn. 699, 702, 37 A.2d 237 (1944).

"On the other hand, § 12-119 allows a taxpayer one year to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was 'manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . .' Our case law makes clear that a claim that an assessment is 'excessive' is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue. It is this element that distinguishes § 12-119 from its more frequently invoked companion, § 12-118. In *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 392, 126 A. 1 (1924), we addressed the predecessor statute of § 12-119 and concluded that there were two possible grounds for recovery under the statute: 'the absolute nontaxability of the property in the municipality where

situated, and a manifest and flagrant disregard of statutory provisions.' Claims under § 12-119 must fall into one of these two categories.

" 'The first category in the statute embraces situations where a tax has been laid on property not taxable in the municipality where it is situated . . . .' *E. Ingraham Co.* v. *Bristol,* 146 Conn. 403, 408, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352 (1959). . . .

"The second category consists of claims that assessments are '(a) manifestly excessive and (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property.' . . . *E. Ingraham Co.* v. *Bristol,* [supra, 409]. Cases in this category must contain allegations beyond the mere claim that the assessor overvalued the property. '[The] plaintiff . . . must satisfy the trier that [a] far more exacting test' has been met: either 'there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part.' *Mead* v. *Greenwich,* 131 Conn. 273, 275, 38 A.2d 795 (1944). Only if the plaintiff is able to meet this exacting test by establishing that the action of the assessors would result in illegality can the plaintiff prevail in an action under § 12-119. The focus of 12-119 is whether the assessment is 'illegal.' *Cohn* v. *Hartford,* [supra, 703]; see *E. Ingraham Co.* v. *Bristol,* supra, 408 (municipality disregarded the statutes when it taxed real property at 50 percent of its value, personal property at 90 percent and motor vehicles at 100 percent at a time when municipalities were prohibited from assessing property as a percentage of its value)." *Second Stone Ridge Cooperative Corporation* v. *Bridgeport,* supra, 339–41.

With this background in mind, we must read the plaintiffs' complaint requesting declaratory relief as predicated on the substantive rights recognized in § 12-119.[9] Paragraph six of the complaint alleges that "[t]he adoption of the Grand List of real property prepared by the Assessor for the year 1989 was illegal, invalid, and contrary to [the assessor's] statutory duties . . . ." This claim, therefore, invokes the second part of § 12-119's requirements, that is, that the assessment "could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . ." The plaintiffs do not dispute this reading of paragraph six of their complaint.

The plaintiffs contend, however, that their declaratory judgment action was nonetheless not predicated on § 12-119 because the complaint does not allege that the assessment values on the 1989 grand list are "manifestly excessive." We disagree.

First, the plaintiffs' declaratory judgment action must be viewed as, in substance, a claim for relief under § 12-119 because it would not have been viable unless it rested on an underlying cause of action cognizable in nondeclaratory judgment form, and because it cannot be viewed as an appeal from the board of tax review under § 12-118. Thus, the claim under § 12-119 that a tax be "manifestly excessive" is implied in the plaintiffs' declaratory judgment action in this case.

Second, if we were to read the plaintiffs' complaint as making no claim as to the excessiveness of the

---

[9] The class plaintiffs in this action did not appeal the assessor's revaluations of their property to the town's board of tax review. The named plaintiffs, however, did file a challenge to their assessments with the board of tax review, and it was in the course of that proceeding that they learned that the assessor had not personally viewed each and every parcel of real estate in the town. Their subsequent appeal from the board's decision is still pending in the Superior Court.

revaluation, but instead contending solely that the assessor's methods violated the statutory commands of § 12-62, the plaintiffs would have no standing to maintain the declaratory judgment action. "An action for declaratory judgment is a special proceeding . . . [that] requires the existence of an actual bona fide and substantial question in dispute which requires settlement between the parties." *Kiszkiel* v. *Gwiazda,* 174 Conn. 176, 180–81, 383 A.2d 1348 (1978). "[T]he declaratory judgment procedure may not be utilized merely to secure advice on the law . . . or to secure the construction of a statute if the effect of that construction will not affect a plaintiff's personal rights . . . ." *Horton* v. *Meskill,* 172 Conn. 615, 627, 376 A.2d 359 (1977); see also *Gannon* v. *Sanders,* supra, 9 (" '[n]o taxpayer is entitled to seek by declaratory judgment the construction of a statute if the effect of that construction will not affect his personal rights' ").

In the absence of some claim that the imposed revaluation of the plaintiffs' properties on the 1989 list was excessive, the plaintiffs' personal rights would not have been implicated. An improper method of valuation, standing alone, would not have caused the necessary injury to maintain a declaratory judgment action. Our doctrines of standing and aggrievement obligate us to avoid adjudicating rights in a vacuum.

In light of these considerations, we must read the plaintiffs' complaint as including both (1) the explicit claim that the revaluation was invalid and contrary to the assessor's statutory duties, and (2) an implicit claim that the revaluations were manifestly excessive. Accordingly, because the plaintiffs' claim must be construed to be predicated on § 12-119, we apply the statute's one year limitation period to the plaintiffs' declaratory judgment action, and the action is there-

fore barred.[10] A contrary result could be reached only by ignoring the legislative preference in §§ 12-111, 12-118 and 12-119 for the prompt resolution of challenges to assessments, and the need for the stability of our towns' tax rolls. "Public policy requires . . . that this court not permit [tax issues] to be the subject of perpetual litigation, at any time, to suit the convenience of the taxpayer." *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597–98, 489 A.2d 1034 (1985).

Our decision today is in accord with this court's treatment of a similar claim in *Norwich* v. *Lebanon,* 200 Conn. 697, 708–13, 513 A.2d 77 (1986). In *Norwich,* the plaintiff brought an action of indebitatus assumpsit to recover money collected under an allegedly illegal assessment approximately six years after the date of the assessment. We held that the plaintiff could not circumvent the time limitations of §§ 12-118 and 12-119 by resorting to the equitable writ of assumpsit because, if "a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." Id., 708. Although resting on the doctrine of exhaustion of remedies, our decision in *Norwich* recognized that the legislative purpose behind the limitation periods for challenging tax assessments "would be thwarted if an action for refund of taxes paid upon a disputed assessment could be brought far beyond the

---

[10] General Statutes § 12-119 specifically states that the right to bring an action under that provision does not displace "other remedies provided by law." In holding that the limitations provision of § 12-119 applies to the declaratory judgment action filed in the present case, we do not suggest that a declaratory judgment action is an improper method to challenge a town's grand list. See *Chamber of Commerce* v. *Waterbury,* 184 Conn. 333, 439 A.2d 1047 (1981) (granting the plaintiffs' request for a declaratory judgment that the assessment values were excessive). Our decision today merely requires that a declaratory judgment action that is predicated on the substantive rights of § 12-119 be brought within one year of the date of assessment.

time limits for contesting an assessment established by these statutes." Id., 710. Although the present case was brought as a declaratory judgment action rather than as an action in assumpsit, the same respect for the legislatively recognized need for the prompt resolution of challenges to tax assessments guides us today.

The remaining issue in this case is the form of our rescript. As a general rule, if a statute creates a cause of action that did not exist at common law, the period established for bringing the action is a limitation of the liability itself, and not of the remedy alone. *American Masons' Supply Co.* v. *F. W. Brown Co.,* 174 Conn. 219, 224, 384 A.2d 378 (1978). In such a case, if a plaintiff has failed to comply with the limitation period, a court should dismiss the action for lack of subject matter jurisdiction. *Orticelli* v. *Powers,* 197 Conn. 9, 15, 495 A.2d 1023 (1985); see also Practice Book § 145. If, however, an action is barred by a statute of limitations period that does not inhere in the action itself, the remedy is not a dismissal but a judgment for the party asserting the bar. See, e.g., *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 464 A.2d 18 (1983).

Section 12-119 has been held to be "merely declaratory of existing legal and equitable rights." *Norwich* v. *Lebanon,* supra, 710; *Connecticut Light & Power Co.* v. *Oxford,* supra, 391–92. We, therefore, read the limitation period contained in § 12-119 not as a jurisdictional prerequisite, but only as an ordinary statute of limitations. Accordingly, the plaintiffs' failure to bring the declaratory judgment action within the limitation period did not deprive the trial court of jurisdiction but merely barred the plaintiffs' declaratory judgment action as untimely.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other justices concurred.