[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The plaintiff, A/C Chatfield Limited Partnership, brings this action pursuant to General Statutes § 12-119, claiming that the town of West Hartford conducted an illegal interim revaluation of its property on October 1, 1993, which was manifestly excessive and could not have been arrived at except by disregarding General Statutes § 12-62.
In this appeal, the plaintiff claims that the assessor increased the valuation of the plaintiff's property on the grand list of October 1, 1993, from $6,839,000 to $9,330,000. The plaintiff further claims that the increase in valuation for October 1, 1993, could not have been arrived at except by revisiting and increasing the assessment of the property, which had been previously valued as of October 1, 1989, at $5,953,000.
The town denies that it conducted a revaluation of the plaintiff's property on October 1, 1993, and interposes three special defenses in which it basically claims that the valuation of the plaintiff's property on October 1, 1993, was not manifestly excessive and therefore does not qualify for relief under General Statutes § 12-119; and, further, that the plaintiff does not have standing to bring this action because the plaintiff has not been injured by the assessor's action SeeWilson v. Kelley, 224 Conn. 110, 119-121, 617 A.2d 433 (1992).
The court finds the following facts. A/C Chatfield Limited Partnership (Chatfield) is a multi-residential rental dwelling complex for the elderly at 1 Chatfield Drive in West Hartford. The subject property is a congregate care facility commonly known as an "independent living facility," which does not provide hands-on care for residents. The subject building contained 121 apartment units as of October 1, 1993, a guest suite; a common dining room, a coffee shop; a library; a hair dressing salon; a barber shop; a woodworking shop; a game room; a cultural center; and a medical office. A certificate of occupancy was issued for Chatfield sometime during the first ten days of November, 1989.
The town conducted its last town-wide revaluation of property on October 1, 1989. At this time, construction of the subject property was substantially complete, but it was unoccupied. The town valued the subject property on October 1, 1989, at CT Page 6251 $5,953,000. The town increased Chatfield's valuation on October 1, 1991, to $5,963,000 and further increased the valuation of Chatfield on October 1, 1992, to $6,839,000 due to the increase in occupancy of the building following the issuance of the certificate of occupancy in November of 1989. No appeal was taken from any of these prior valuations. On October 1, 1993, the board of assessors increased the valuation of Chatfield to $9,330,000.
The town introduced several appraisal reports of the subject property to show that the October 1, 1993 assessment was far below the real value of the property, and therefore, the plaintiff could not show that it was harmed by this assessment. In 1988, Phillip A. Goodsell, a real estate appraiser, placed a value of $18,750,000 on the property as of November 7, 1988. (Defendant's Exhibit 48.) This appraisal was performed for the then owners to support mortgage financing. This valuation was speculative at best based upon the income approach, assuming that the subject property was complete and in business. Goodsell performed another appraisal of the property on May 2, 1990, for the benefit of Fleet Bank. (Defendant's Exhibit 12.) Goodsell valued the property, as of May 2, 1990, at $17,000,000 using the income approach, and $15,835,000 using the cost approach. One more appraiser had a hand in trying to value the property. John F. Rowlson Company, on February 6, 1989, did a feasibility estimate of market value for Frank Shuch of the now infamous Colonial Realty. (Defendant's Exhibit 17.) Rowlson's estimate of value was $22,750,000, typical of highly speculative Colonial real estate investor driven deals. At the trial, the plaintiff acknowledged that the total construction cost for Chatfield was approximately $14,500,000.
The reason that the assessor increased Chatfield's valuation to $9,330,000 was due to the discovery that an error had previously been made by the prior assessor in determining the value of the subject property.
For the assessment years of October 1, 1989, 1990, 1991, and 1992, Harold Ducey was the Director of Assessment for the town. During his tenure, the subject property was described in the town's assessment records as being 50% complete as of October 1, 1989 when the property was valued at $5,963,000. Although the construction of the property was complete upon the issuance of the certificate of occupancy by the town in November of 1989, the assessment records for the list of October 1, 1991, still incorrectly noted that the building was 50% complete. CT Page 6252 (Plaintiff's Exhibit A.) It was not until Donna L. Sims replaced Ducey as Director of Assessment in March of 1993 that the error was discovered. When Sims examined the assessor's records for the subject property, she concluded that the property was not properly valued at its fair market value. Recognizing that an error had been made in previously determining the fair market value of Chatfield, the assessor's office engaged in mathematical gymnastics to gloss over the error in order to arrive at the fair market value of the property on October 1, 1993. As an example, when Chatfield took its present appeal to the board of tax review in 1994, the board asked Ducey, then a senior property appraiser for the town, to explain the reason, including the "mathematics," for the substantial increase on the October 1, 1993 grand list. Ducey reported that the "functional utility"[1] had changed from .50 to .75 on the second and third floors of the building. Although Sims testified that she considered phasing in the fair market value of the property over a period of time, she concluded that once the certificate of occupancy had been issued, the property should have been fully valued as of the following grand list in 1990. It was the town's policy, when dealing with new rental income property, to phase in the value over a period of time to give the property owner an opportunity to increase the occupancy level. In the end, Sims used the same justification as Ducey to increase the value of the property from the 1992 grand list to the 1993 grand list. Sims' justification was the need to correct the grade modifier and functional utility from .50 to .75. This justification was essentially gloss for the real reason for the change in valuation.
Essentially, Sims concluded that as of October 1, 1993, Chatfield was not correctly valued because it was, as of October 1, 1993, a fully occupied income producing property.
Our function in this appeal is not to determine whether the valuation placed upon Chatfield by the assessor on October 1, 1993, was the correct valuation, but rather, to determine whether the assessor is allowed by law to change a prior valuation of property.
General Statutes § 12-62 mandates that all assessors conduct a valuation of all real property within his or her town at least once every ten years. The last town wide revaluation by the town of West Hartford was October 1, 1989. For the purposes of this appeal, the plaintiff became liable for the payment of municipal taxes from the date of the issuance of the certificate CT Page 6253 of occupancy. General Statutes § 12-53a. The determination of the assessment on this newly constructed property was based upon the taxable grand list for the immediately preceding assessment date of October 1, 1989. General Statutes § 12-53a(c). Although the certificate of occupancy for Chatfield was issued shortly after October 1, 1989, the town did place a valuation on the subject property as of October 1, 1989, of $5,953,000. General Statutes § 12-53a(c) mandates that the assessor determine the "increment by which assessment for the completed construction exceeds the assessment on the taxable grand list for the immediately preceding assessment date." The town did not make any change in the valuation of Chatfield property for the assessment year October 1, 1990, but rather waited until October 1, 1991, at which time the valuation of the subject property was increased by $10,000 to $5,963,000. On October 1, 1992, the town further increased the valuation of Chatfield to $6,839,000 due to improvements made to the building following the issuance of the certificate of occupancy in November of 1989. However, the erroneous notation that the construction of the building was 50% complete remained on the assessor's card until the 1993 grand list.
The focus of any appeal under § 12-119 is whether the assessment is illegal. Wilson v. Kelley, supra, 224 Conn. 110,119. Section 12-119 requires two conditions to be fulfilled: 1) that the assessment imposed by the assessor was manifestly excessive and 2) that the action of the assessor could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the real property.
Section 12-119 "requires a showing that an assessment is both manifestly excessive and illegal." (Emphasis in original.) Paukerv. Roig, 232 Conn. 335, 341-42, 654 A.2d 1233 (1995). To prevail under § 12-119, the plaintiff must demonstrate "both a `manifestly excessive' assessment and disregard of the statutes in arriving at that assessment." (Emphasis in original.) MacLeanv. Darien, 43 Conn. App. 169, 173, A.2d (1996). The purpose of the term "manifestly excessive" in § 12-119 is to give standing to a taxpayer to challenge the alleged illegality of the assessor's action. See Wilson v. Kelley, supra, 224 Conn. 121. If the taxpayer was not injured by the action of the assessor, he or she would not be aggrieved and thus could not call upon the judicial system to adjudicate the taxpayer's rights. See id.
The plaintiff in this case offered no evidence that the CT Page 6254 assessment was manifestly excessive. Instead, the plaintiff argues that the town's authorized $2.5 million increase in value on the 1993 grand list, in and of itself, satisfies the plaintiff's burden of showing that the 1993 assessment was manifestly excessive. However, the appraisal reports presented, as well as the plaintiff's admission that costs of approximately $14.5 million were incurred near the time of the 1989 revaluation, show that the town's 1993 $9,330,000 valuation was not manifestly excessive. With construction costs of a new facility placed of $14.5 million in 1989, the plaintiff has not established that its assessment was manifestly excessive, and the plaintiff cannot prevail in its claim under § 12-119.
Even though we find that the plaintiff cannot prevail because it has not established that the assessment was manifestly excessive, we will consider the issue of whether the assessor is authorized by statute to correct a prior error in valuation of real property at a time other than at a statutorily mandated revaluation. See § 12-62.
The assessor has broad power under § 12-55 to correct mistakes and to equalize assessments. 84 Century LimitedPartnership v. Board of Tax Review, 207 Conn. 250, 262-63,541 A.2d 478 (1988). In 84 Century, the assessor adjusted a real estate assessment in the interim years before the decennial revaluation on the basis that a sale of the property showed a 141% increase in value. The court in 84 Century concluded that the language of § 12-55 allowed the assessor to make an interim change in the assessment based on a change in market value caused by a sale of the property. Id., 263.
Following the decision in 84 Century, the legislature enacted P.A. 88-321, now § 12-63d, which provides, "[t]he assessor in any municipality may not, with respect to any parcel of real property in the assessment list for any assessment year, make a change in the assessed value of such parcel, as compared to the immediately preceding assessment list, solely on the basis of the sale price of such parcel in any sale or transfer of such parcel." Section 12-63d negates 84 Century only when the basis for the interim change in assessment is due to a sale of that property. Section 12-63d does not alter the basic concept that "although tax assessors cannot be required to make an interim revaluation of property, they may do so in accordance with §12-55, which authorizes assessors to equalize the tax lists."Pauker v. Roig, supra, 232 Conn. 343, Section 12-55 grants broad CT Page 6255 powers to assessors. "It is a clear legislative mandate to grant to local assessors a continuing duty unrelated to decennial revaluation, to achieve administratively a fair and equal assessment for all taxpayers. The power to equalize the lists, if necessary, imports a watchtower role for the assessor to correct inequalities, whether too high or too low." 84 Century LimitedPartnership v. Board of Tax Review, supra, 207 Conn. 262.
The change in assessment of the subject property on October 1, 1993, was not an interim revaluation but rather an original valuation that should have been imposed because of a change in the condition of the property. We see nothing illegal in the action of the assessor to correct a previous valuation which was based on the misdescription of the status of the property on the property record card or a substantial change in occupancy. If the assessor had not taken this action, the erroneous determination made by the previous assessor would have locked in the original valuation until the next town-wide revaluation. This inaction would be contrary to the legislative mandate to assessors to equalize the tax lists pursuant to § 12-55, and would be unfair to all other taxpayers in the town who are paying taxes on full valuation as required by General Statutes § 12-64.
We find no basis to conclude that the action of the defendant town was illegal in increasing the value of the subject property on October 1, 1993. The plaintiff has not met either prong of its claim under General Statutes § 12-119.
Accordingly, this appeal is dismissed without costs to either party.
Aronson, J.