[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 17, 1997
The plaintiff, Frank Bisecco d/b/a Flix Video ("Flix") brought this action against the Norwalk Zoning Commission, the City of Norwalk and its zoning enforcement officer for a declaratory judgment that § 118-1031 of the Norwalk Zoning Regulations is invalid and unenforceable as to him. The plaintiff BB Entertainment of Westchester, Inc. filed an intervening complaint seeking the same relief.[1]
Flix has been in operation in its present location as a business for the retail sale and rental of sexually explicit video tapes since November 1991. The plaintiff, BB Entertainment of Westchester, Inc., (the "Zebra Club") is a bar and/or restaurant serving wine and beer, with pool tables and live entertainment consisting of nude female dancers. The Zebra Club opened for business in early 1993 in its present location and there was evidence that its predecessor, the "Monkey Bar" had engaged in the same business activities.
The following additional facts are established by testimony and by the parties' stipulations of facts.[2] Prior to January 1994, Flix had extensively advertised its wares by newspaper, claiming in one weekly advertisement to be "one of Connecticut's largest adult video centers." A sign on its premises proclaims "Flix Video." Prior to the adoption of § 118-1030 of the Norwalk Zoning Regulations Flix' business was, and remains today, a retail business located in a B-2 business district, which permits retail sales as of right. Also, prior to the enactment in question, there had been no other zoning regulations in effect which prohibited the retail sale and rental of videos at Flix' location.
Likewise, the Zebra Club had advertised its business extensively including advertisements in several local newspapers, two AM radio stations and one FM station. A grand opening was held on May 12, 1993. The club is, and was prior to § 118-1030, located in an LI-1 zone (Light Industrial 1 Zone)[3] wherein a bar and/or restaurant is a permitted use as of right. Before the passage of § 118-1030, no other zoning regulations prohibited such use at the Zebra Club premises.
On January 19, 1994, the defendant Norwalk Zoning Commission amended the zoning regulations by adding § 118-1030, effective January 28, 1994, thereby establishing rules and regulations with respect to the use and operation of "Adult Use Establishments."[4] Also, effective on said date, the CT Page 3658 definition of Adult Use Establishments was added to § 118-100 of the Regulations.[5] Section 118-1031, enacted with § 118-1030 provides for the amortization of such businesses existing as of the time of the passage of the new regulations. This provision allows a nonconforming establishment to continue to operate for not more than two years from the effective date of the ordinance.[6] The plaintiffs allege and the defendants admit that as a result of the adoption of § 118-1030, the businesses of both plaintiffs are no longer permitted uses under the Norwalk Zoning Regulations and that under § 118-1031, both establishments "could be amortized out of existence two (2) years after the effective date of the Regulation which is January 28, 1996." See, Paragraphs 5 and 7 of the Complaint and Intervening Complaint.
The courts of this state have been granted the power to declare rights and legal relations by virtue of Connecticut General Statute § 52-29.[7] The Connecticut Practice Book also guides courts in issuing declaratory judgments, including prescribing conditions under which the declaratory judgments may not be rendered.[8] In this case, the defendants have enacted a zoning ordinance which mandates the discontinuance of the plaintiffs' businesses as of January 28, 1996. The plaintiffs contend that such an ordinance is invalid as applied to them. Thus, there is obvious uncertainty as to the plaintiffs' legal rights, and indeed those of the defendants. The fact that no enforcement proceedings against the plaintiffs have yet been instituted does not preclude the plaintiffs from asking for, and the court from granting, a declaratory judgment. The fact that the deprivation of the plaintiffs' rights might depend upon the happening of a future event, does not render them any the less uncertain. The plaintiffs are not required to await the action of a zoning enforcement official before settling the issue which so clearly confronts them. Sigal v. Wise, 114 Conn. 297,158 A.2d 891 (1932). In that case, the defendants attacked the prayer for declaratory judgment upon the ground that ". . . the relief claimed is hypothetical and contingent upon the happening of an uncertain event and does not concern any presently existing rights. The statute authorizing the Superior Court to render declaratory judgments is as broad as it well could be made. General Statutes, § 5334. The rules adopted to carry out the statute authorize the Superior Court to render such judgments "as to the existence or nonexistence (a) of any right, power, privilege or immunity; or (b) of any fact upon which the existence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now CT Page 3659 exists or will arise in the future." Practice Book, p. 255, § 62. While the rules go on to limit that power in certain respects, neither in them nor in the statute is there any restriction upon the power of the court to render judgments determining rights which are contingent upon the happening of some future event. Indeed, a contrary intent is clearly indicated by the provision in the rules authorizing the determination of any fact upon which the existence or nonexistence of any right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future. The remedy by means of declaratory judgments is highly remedial and the statute and rules should be accorded a liberal construction to carry out the purposes underlying such judgments. One great purpose is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits. Fully to carry out the purposes intended to be served by such judgments, it is sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening. Even if the right claimed in this case is a contingent one, its present determination may well serve a very real practical need of the parties for guidance in their future conduct. A construction of our statute and rules which would exclude from the field of their operation the determination of rights, powers, privileges and immunities which are contingent upon the happening or not happening of some future event would hamper their useful operation. Such a construction does not, however, compel the Superior Court to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties. The second of the limitations upon the exercise of the power contained in the rules is designed to cover just such situations. It provides that there must be an actual, bona fide and substantial question or issue in dispute, or a substantial uncertainty of legal relations which requires settlement. The allegations of the complaint present such an uncertainty of legal relations as upon the hearing the court might deem to require present settlement. Id., 301-02.
The defendants have cited to no authority contrary to the precepts espoused in Sigal.[9] See also, Horton v. Meskill,172 Conn. 615, 627, 376 A.2d 359 (1977): Wilson v. Kelly,224 Conn. 110, 115, 617 A.2d 433 (1992); Kiszkiel v. Gwiazda,
CT Page 3660174 Conn. 176, 180-81, 383 A.2d 1348 (1978). The court finds the controversy between the parties to be justiciable warranting adjudication by declaration of their rights.[10]
This case is not about the societal acceptability of the plaintiffs' businesses, nor is the decision herein to be construed as a comment thereon. Neither does the matter concern the legality or propriety of these endeavors under any criminal law, or liquor regulations, or any governmental mandate that may exist concerning obscene sales or conduct, or any other governmental mandate that may affect the plaintiffs. Indeed, the court does not herein determine the right of the City of Norwalk to regulate, through zoning, the operation of "adult uses establishments" or where they may be located.
The sole issue in this case is whether the City of Norwalk, through its zoning regulations, may require the plaintiffs' existing businesses to discontinue operation because of the subsequent passage of a provision which prohibits such businesses in their respective zoning districts. Stated otherwise, can Norwalk prohibit a valid nonconforming use under state law and its own zoning code?
The threshold question is whether the businesses of the plaintiffs constitute legal nonconforming uses. As to plaintiff Flix video, its retail business began in 1991, prior to the adoption of § 118-1030 in 1994 and was and is located in a B-2 business district which permits retail business. Prior to § 118-1030 there was no zoning regulation in effect which prohibited the retail sale and rental of videos on the plaintiffs' property, nor are there any zoning violations of record which concern this case. Flix widely advertised its store and there is no evidence in the record that the use of the premises for the sale and rental of "adult videos" was not generally known in the neighborhood continuously since its inception.
The plaintiff BB Entertainment of Westchester, Inc.'s Zebra Club and its use as a bar/restaurant featuring live female nude dancers dates back to at least 1993. Similar to the zoning history of Flix, a bar/restaurant was a permitted use in the zoning district in which the plaintiff was and is located prior to enactment of § 118-1030, and the Zebra Club was, from its inception, generally known in the neighborhood for the uses in which it engaged. The court finds that both businesses were in CT Page 3661 continuous operation from the respective dates of their commencement.
A nonconforming use is a use which would constitute a violation of a zoning regulation or amendment were it not the fact that it has been "grandfathered" because it predates such regulation or amendment. "There exists throughout Norwalk lawful lots, structures and uses of land which are nonconforming because they do not comply with [the zoning regulations] as originally adopted or subsequently amended. The purpose of this regulation is to permit nonconformities to continue . . ." Building Zone Regulations of the City of Norwalk, Article 80. Section 118-800A. A nonconforming use is deemed to have existed before the effective date of an amendment to the Regulations "if the use was in being on a continuous basis . . ." Id., § 118-800A.
Connecticut General Statutes § 8-2 also addresses the common policy to permit uses once allowed to remain.[11] The City of Norwalk has seen fit to regulate the content of products sold and performances presented by amendment to its zoning regulations. Section 118-100 of said regulations specifically defines what matters are intended to be affected,[12] and designates them as "Adult Use Establishments." Section 118-1030 restricts the location of such establishments to certain zones and to certain distances from other adult use establishments and from places of worship, schools, community centers or residence zones. It is undisputed that the provisions of § 118-1030 encompass the businesses and locations of both plaintiffs. The regulations go on to state[13] that an adult use which predates the amendment shall be "permitted to continue to operate for a period not to exceed two (2) years . . ." Building Zone Regulations of City of Norwalk § 118-1031A(1). The defendants advance the proposition that because the plaintiffs have not established that the activities engaged in by them were permitted uses prior to the zoning change, they cannot be considered legal nonconforming uses. Its reasoning is circuitous since there would hardly be a reason to prohibit such uses in certain districts, as does § 118-1030, if they were illegal under zoning in all districts. The defendants seem to contend that since the regulations did not expressly permit retail sales of sexually explicit videos, nor the performance of nude dancing in restaurants, such uses were not permitted under the category "retail sales" and "restaurants/bar" respectively. The defendants point to no authority for such a proposition. It would be a novel approach if zoning regulations were required to specify each type of retail CT Page 3662 sale permitted, or every kind of entertainment allowed. As to whether the uses are legal under any unspecified criminal or other law or regulation, such issue was not addressed by the parties, and the court is unwilling to presume that the plaintiffs' First Amendment rights would give way to a hypothetical criminal prosecution against them.
The uses of both plaintiffs were, under the zoning regulations, valid and legal prior to the adoption of the Zoning changes in question. The Norwalk Zoning Regulations themselves reached the same conclusion as to the nonconformity of the plaintiffs' uses. Section 118-1031A(1) renders that finding indisputable:
 Any adult use establishment operating on the effective date of this regulation, which does not comply with one (1) or more of the above restrictions shall be deemed a nonconforming use. Norwalk Zoning Regulations § 118-1031A(1).[14]
It is the next sentence of section 118-1031A(1) which is the offender and of which the plaintiffs complain:
 . . . such nonconforming adult use establishments shall be permitted to operate for a period not to exceed two (2) years, unless sooner terminated for any reason . . . Norwalk Zoning Regulations, Section 118-1031A(1).
It is this clause which impermissibly abridges the plaintiffs' rights to continue their nonconforming uses under both the Connecticut General Statutes and the Norwalk Zoning Regulations. See, Connecticut General Statutes § 8-2: Norwalk Zoning Regulations, § 118-800: James F. Loughlin Agency, Inc. v. WestHartford, 166 Conn. 305, 309-11, 348 A.2d 675 (1974).
Although the City of Norwalk may have the right and authority to regulate, through zoning, the location of business uses such as the plaintiffs (an issue neither presented to nor decided by the court), it clearly has no power to prohibit the continuation of the plaintiffs' businesses in their present locations.
Therefore, the court declares, pursuant to § 52-29 of the Connecticut General Statutes, that the amortization provisions of § 118-1031 of the Norwalk Zoning Regulations are invalid and CT Page 3663 unenforceable as to both plaintiffs.
D'ANDREA, J.